# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ORESTE BRUZON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Civil Action No. 07-01393 (EGS) |
| | ) |
| **DRUG ENFORCEMENT** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Drug Enforcement Administration ("DEA"), through counsel, the United States Attorney's Office for the District of Columbia respectfully moves for judgment as a matter of law.  In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities, statement of material facts not in genuine dispute, the declarations of the Defendant and the U.S. Department of Justice Office of Information and Privacy, and proposed order.

*Pro se* Plaintiff will please take note that the assertions contained in the accompanying declarations and other attachments in support of Defendant's motion will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the

assertions in Defendant's declarations and attachments.  See Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); and Local Civil Rule 7.

October 3, 2007                          Respectfully submitted,


_____ /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____ /s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____ /s/
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney

Counsel for the Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ORESTE BRUZON** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-01393 (EGS)** |
| ) | |
| **DRUG ENFORCEMENT** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant respectfully submits this memorandum of points and authorities in support of its

motion for summary judgment.

**I. Background**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

concerns the Plaintiff's FOIA requests to Defendant Drug Enforcement Administration.  Plaintiff

is a federal prisoner who is currently housed at Coleman Low Federal Correctional Institution,

Coleman, FL.  Compl. ¶ 1.  By letter dated June 13, 2006, and received by DEA on June 27, 2006,

Plaintiff, citing his criminal case number, requested (1) information regarding himself compiled by

DEA, (2) an identification of any agencies to whom DEA released information about himself, (3)

a copy of DEA regulations related to the FOIA, and (4), in a note stapled to the request, "all report

investigation the exhibit #6 from 9-29-94, and 490.6 grams cocaine." Little Decl., ¶ 11.  Id.  A copy

of Plaintiff's letter dated June 13, 2006, with the note, is attached to the Little Declaration as Exhibit

A.  Id.  By letter dated February 27, 2007,  DEA  released portions of one page to Plaintiff.  Little

Decl., ¶ 20.  DEA withheld three pages in their entirety.  Id.  DEA withheld this information pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and pursuant to exemption (j)(2) of the Privacy Act (PA).  Id.  See also DEA letter dated February 27, 2007, attached to the Little Declaration as Exhibit J.

By letter dated March 12, 2007, Plaintiff stated that he did not receive the DEA letter dated February 27, 2007, or the page forwarded therewith.  Little Decl., ¶ 21.  Plaintiff requested that DEA forward him a copy of the requested documents.  Id.  See Plaintiff's letter dated March 12, 2007, attached to the Little Declaration as Exhibit K.  The DEA Freedom of Information Operations Unit (referred to at DEA and hereinafter referred to as "SARO") is the DEA office responsible for responding to, searching for, and processing and releasing information requested under the FOIA and PA.  Little Decl., ¶¶ 9, 10.  Before the re-release by SARO of the page that Plaintiff complains he did not receive, Plaintiff filed this action.  Little Decl., ¶ 23.  Thereupon, the SARO file associated with Plaintiff's request was forwarded, along with the responsibility for responding to Plaintiff's request, to the DEA Office of Chief Counsel.  Attorney William Little of that Office was assigned to the matter.  Id.  There is no record that Plaintiff appealed the February 2007 determination prior to filing this action.  Little Decl., ¶¶ 22, 23; Jones Decl., ¶ 2.

Upon reviewing Plaintiff's letters and the documents initially identified by SARO as potentially responsive, Mr. Little determined that, based upon Plaintiff's requests as gleaned from all his correspondence, the documents were not responsive to Plaintiff's request, that Plaintiff's letters dated June 13, 2006, and October 16, 2006, did not reasonably describe DEA records in sufficient detail to allow DEA to locate the records with a reasonable amount of effort.  Mr. Little also determined that Plaintiff previously had submitted a similar request for information related to him

2

and that his June and October 2006 letters duplicated his prior request. He further concluded that the records described by Plaintiff, consisting of DEA investigative and evidence reports, from DEA Investigative Case File No. G3-94-0100 related to Government Exhibit 6, a trial exhibit, did not meet the quantity or date description provided by Plaintiff, and were otherwise exempt from disclosure under exemption (j)(2) of the PA, and exemptions (b)(7)(C), (b)(7)(D) and (b)(7)(F) of the FOIA. Little Decl., ¶ 25.  Thus, DEA does not believe it would be proper to release any additional documents to Plaintiff.  Id.

As set forth in detail in the accompanying Statement of Material Facts and agency declarations, Defendant has fully and properly responded to Plaintiff's FOIA requests.  Defendant therefore has satisfied its obligations under the FOIA, and is entitled to summary judgment.

## II.  Legal Standards

### A.     Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).   In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[1]  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v.

---

[1] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the scope of the request either has been produced, not withheld in part, is unidentifiable, or is exempt from disclosure in whole or in part.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. Federal Trade Commission, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

## B.    Requester Must Exhaust Administrative Remedies Prior to Suit.

FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where requested documents have been "improperly withheld" by an agency.  5 U.S.C. § 552(a)(4)(B).  The courts have interpreted this section of the statute to mean that jurisdiction exists only upon a showing by the plaintiff that the defendant (1) improperly (2) withheld (3) agency records.  See Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 150 (1980).  Indeed, "[t]he plaintiff must show that the agency 'contravened all three components of this obligation' in order for jurisdiction to be valid." Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (citing Kissinger, 445 U.S. at 151).  Absent such a showing, FOIA confers no "judicial authority to devise remedies and enjoin agencies."  Id.

_____  Exhaustion of administrative remedies is required under FOIA before a party can seek judicial review.  Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986). A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including:  (1) providing the required proof of identity, Summers v. United States Dep't of Justice, 999 F.2d 570, 572-73 (D.C. Cir. 1993);  (2) reasonably describing the records sought, Gillin v. IRS, 980 F.2d 819, 822-23 (1st Cir. 1992);  (3) complying with fee requirements, Trueblood v. United States Dep't of Treasury, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) administratively appealing a denial of records, Oglesby v. United States Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990).   See also 5 U.S.C. § 552(a)(3) (requester must follow agency's published regulations governing FOIA requests); Kessler v. United States, 899 F. Supp. 644, 645 (D.D.C. 1995) (failure to follow agency regulations constitutes failure to exhaust administrative remedies). Where a FOIA plaintiff attempts to obtain

judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction. <u>Oglesby</u>, 920 F.2d at 57.

### C.    Standards for a Proper Search for Responsive Records

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. <u>Oglesby</u>, 920 F.2d at 68; <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material. <u>Id</u>. at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it reasonably believes responsive records are likely to be located. <u>Oglesby</u>, 920 F.2d at 68. Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." <u>Truitt v. Dept. of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'" <u>Miller v. Dept. of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) <u>citing</u> <u>National Cable Television Association v. FCC</u>, 479 F.2d 183, 186 (D.C. Cir. 1973). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. <u>Nation Magazine</u>, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. <u>Maynard v. CIA</u>, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." <u>Oglesby</u>, 920 F.2d at 68; <u>see</u> <u>SafeCard Servs. v. SEC</u>, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." <u>Miller</u>, 779 F.2d at 1383; <u>Goland v. Central Intelligence Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1978). Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" <u>Carney v. Dept. of Justice</u>, 19 F.3d 807, 812 (2d Cir. 1994), <u>cert. denied</u>, 513 U.S. 823 (1994) (quoting <u>SafeCard Servs.</u>, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. <u>Miller</u>, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. <u>See</u> <u>Carney</u>, 19 F.3d at 813; <u>SafeCard</u>, 926 F.2d at 1200; <u>Maynard v. CIA</u>, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." <u>Steinberg v. Dept. of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting <u>Weisberg v. Dept. of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

8

**D.      Standards for A Proper <u>Vaughn</u> Index**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs."  <u>Judicial Watch v. U.S. Dept. of Health and Human Services</u>, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S. C. 1564 (1974).  There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form."  <u>Kay v. FCC</u>, 976 F. Supp. 23, 35 (D.D.C. 1997).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  <u>Delaney, Midgail & Young, Chartered v. IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987).  <u>See also</u> <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987); <u>Hinton v. Dept. of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).[2]

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  <u>See</u> <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the

---

[2] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure."  <u>Id</u>.  "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted."  <u>Information Acquisition Corp. v. Dept. of Justice</u>, 444 F. Supp. 458, 462 (D.D.C. 1978).

descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

### E. Legal Standards for Applicable Exemptions to Release under the Privacy Act and FOIA.

#### 1. Privacy Act Exemption (j)(2)

As stated by the Court in Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28 (D.D.C. 2004), "[e]xemption (j)(2) exempts from disclosure 'any system of records within the agency,' as long as the agency that maintains the system of records 'performs as its principal function any activity pertaining to the enforcement of criminal laws....' 5 U.S.C. § 552a(j)(2)." Id. at 35.

#### 2. FOIA Exemption 2

Title 5, United States Code, Section 552 (b)(2) ("Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1112 (D.C. Cir. 2007); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Depending

upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."

"Low (b)(2)" information refers to internal procedures and practices of an agency the disclosure of which would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low b(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dept. of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and similar administrative markings are exempt from disclosure. The reason is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin v. Lauer, 686 F.2d at 34.

The "high (b)(2)" exemption excepts from mandatory disclosure documents relating to more substantive internal matters. See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. AT, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2. Courts have interpreted this exemption to apply to a wide range of information, including general guidelines for conducting investigations (see PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993));

11

guidelines for conducting post-investigation litigation (Schiller v. NLRB, 964 F.2d at 1207)); a training manual with information pertaining to surveillance techniques (Crooker, 670 F.2d at 1073); criteria for prison gang-member classification (Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug-violator codes (Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989).

### 3.    FOIA Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy the threshold issues of, first, whether the agency has the requisite law enforcement purpose in compiling the records at issue and, second, whether the information gathered has a sufficient nexus to that law enforcement purpose.  See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C. Cir. 2002); Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002);  Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982).

In Jefferson, the Court drew a distinction between agencies gathering information as part of any government agency's "oversight of the performance of duties by its employees," and information sought as part of investigations into illegal conduct for which the agency might impose criminal or civil sanctions.  284 F.3d at 177.  Thus, the rule from Jefferson provides a broadly applicable distinction based more on the agency's mission and reasons for collecting the information at issue.

Many types of agency activities have been held to have a law enforcement purpose, even several that arguably go beyond the core law enforcement mission of investigating crimes that have been committed.  See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun

12

<u>Violence v. Dep't of Treasury</u>, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); <u>Doe v. DOJ</u>, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

In addition, the caselaw in this Circuit is unambiguous that the agency need not tie its collection of information to any specific or ongoing investigation. <u>See</u> <u>Tax Analysts</u>, 294 F.3d at 78; <u>Keys</u> 830 F.2d at 342. This principle is fully consistent with the courts' broad acceptance of the view that the 1986 amendments to the FOIA relaxed the required threshold showing for Exemption 7. <u>See, e.g.</u>, <u>United States Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 780 (1989) (recognizing that the shift from "would constitute" standard to "could reasonably be expected to constitute" standard represents a congressional effort to ease considerably the burden in invoking Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or information' for 'investigatory records' as the threshold qualification for the exemption: This amendment would broaden the scope of the exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory."); <u>Hopkinson v. Shillinger</u>, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement.").

### 4.    FOIA Exemption 7(C)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1115-16 (D.C. Cir. 2007); Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). Sussman v. U.S. Marshals Service, 494 F.3d at 1115-16; Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish their privacy interests.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

14

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. National Archives and Records Administration v. Favish, 541 U.S. 157, 173 (2004); Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests. Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

15

5.    **FOIA Exemption 7(D)**

Title 5, United States Code,  § 552  (hereinafter Exemption 7(D)), exempts from disclosure

material that:

> could reasonably be expected to disclose the identity of a confidential
> source including a State, local or foreign agency or authority or any
> private institution which furnished information on a confidential
> basis, and, in the case of a record or information compiled by a
> criminal law enforcement authority in the course of a criminal
> investigation, or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential
> source.

Exemption 7(D) recognizes that information furnished by third parties cooperating with federal,

state, or local law enforcement investigations is, by its very nature, confidential.  Significantly, the

statute affords protection from disclosure to all the information furnished by third-party sources, as

well as the actual identity of the cooperating individual, if there has been an explicit assurance of

confidentiality, or circumstances exist from which such an assurance could reasonably be inferred.

U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).

This exemption recognizes the distinct likelihood that the identity of a source may often be

determined from an analysis of the information furnished by the source himself.  Indeed, this

becomes more inevitable when the analysis is conducted by a person familiar with the facts and

circumstances on which the investigation was predicated.  Thus, to disclose the identity of a

cooperating individual under such circumstances could result in more than an unwarranted invasion

of his privacy; it could breach the confidentiality under which the individual cooperated.

16

The <u>Landano</u> Court acknowledged that "[t]here may . . . be . . . generic circumstances in which an implied assurance of confidentiality fairly can be inferred." <u>Landano</u>, 508 U.S. at 181. The Court should take into consideration the informant's relation to the crime and the character of the crime for which information has been provided in determining implied grants of confidentiality. Since <u>Landano</u>, courts have identified various crimes which warrant an implied assurance of confidentiality. In <u>Mays v. Drug Enforcement Administration</u>, 234 F.3d 1324 (D.C. Cir. 2000), the Court of Appeals for this Circuit held that the crime of trafficking in cocaine is inherently so dangerous that individuals supplying information about such crimes generally should be entitled to an implied grant of confidentiality.

### 6.    FOIA Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F). Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects. <u>Maroscia v. Levi</u>, 569 F.2d 1000, 1002 (7th Cir. 1977); <u>Albuquerque Publ'g Co.</u>, 726 F. Supp. 851, 858 (D.D.C. 1989); <u>Docal v. Bennsinger</u>, 543 F. Supp. 38, 48 (M.D. Pa. 1981); <u>Nunez v. DEA</u>, 497 F. Supp. 209, 212 (S.D.N.Y. 1980). Although this exemption applies to information that is also subject to the protection of Exemption 7(C), <u>supra</u>, there is no balancing required for the use of Exemption 7(F). In any event, it is difficult to imagine any public interest that could outweigh the safety of an individual.

17

### F.     Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Sussman v. U.S. Marshals Service</u>, 494 F.3d at 1116-7; <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." <u>Mead Data</u>, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

18

III.    **Defendant Complied with Privacy Act and FOIA Requirements.**

A.    **Plaintiff Failed to Exhaust Administrative Remedies for DEA FOIA Request because he did not file an Appeal of the Agency's Decision.**

Plaintiff is barred from seeking judicial review of this suit because he failed to exhaust his administrative remedies when he did not appeal the decision of the DEA before seeking judicial review.  He only submitted a premature appeal of the DEA's failure to respond to his request. Plaintiff filed a FOIA request with the DEA (letter dated June 13, 2006).  By letter dated July 16, 2006, to the Department of Justice, Office of Information and Privacy (OIP) received by OIP on August 4, 2006, Plaintiff appealed the DEA failure to respond to his request "for information on drug exhibits . . ." (Request No. 06-1380) outlined in his letter dated June 13, 2006 .  Little Decl., ¶ 12 & Exhibit B; Jones Decl., ¶ 2.  By letter dated September 19, 2006, OIP informed Plaintiff that Department of Justice regulations provide for an administrative appeal only after there had been an adverse determination by a component, and that since no determination had yet been made, there was no action for OIP to consider on appeal.  Little Decl., ¶ 13, Exhibit C; Jones Decl., ¶ 2.

By letter dated October 5, 2006, DEA informed Plaintiff that it would be necessary for him to submit a Department of Justice (DOJ), Certificate of Identity, Form 361 before it could begin processing his request.  Little Decl., ¶ 14; Exhibit D.  By letter dated October 19, 2006, received by DEA on October 27, 2006, Plaintiff again indicated, and referring to testimony from his criminal trial, that he was specifically requesting an investigative report dated September 29, 1994, regarding drug exhibit number 6 and providing a file number--G3-94-0100.  Little Decl., ¶ 16 & Exhibit F. Attached to the letter was a completed DOJ Form 361, Certificate of Identity.  By letter dated

January 17, 2007, DEA acknowledged receipt of the second DOJ Form 361, reopened the request and placed it on a list of requests waiting processing. Little Decl., ¶ 19 & Exhibit I.

By letter dated February 27, 2007, DEA released portions of one page to Plaintiff. Little Decl., ¶ 20 & Exhibit J. Three pages were withheld in their entirety. Id. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and exemption (j)(2) of the Privacy Act. Id. By letter dated March 12, 2007, Plaintiff informed DEA that he had not received the page enclosed with its letter dated February 27, 2007. Little Decl., ¶ 21 & Exhibit K. Plaintiff requested that DEA forward him a copy of the requested documents. Id. There is no record that Plaintiff appealed the February 2007 DEA determination before filing this action. Little Decl., ¶ 22; Jones Decl., ¶ 2.

The DEA responded to Plaintiff's requests but Plaintiff failed to file an appeal. See Little Decl., ¶ 22; Jones Decl., ¶ 2. Plaintiff's failure to appeal constitutes a failure to exhaust administrative remedies prior to judicial review, consequently rendering his district court claim not actionable. Exhaustion of administrative remedies is required under the FOIA before a party may seek judicial review. See Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986). When a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full and timely administrative exhaustion, the lawsuit is subject to ready dismissal because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (citing Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990)); see, e.g., Almy v. U.S. Dep't of Justice, No. 96-1207, 1997 WL 267884, at *3 (9th Cir. May 7, 1997) ("[T]he FOIA requires exhaustion of administrative remedies before the filing of a lawsuit."); Voinche v. U.S. Dep't of the

Air Force, 983 F.2d 667, 669 (5th Cir. 1993) ("We conclude that the FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review."). Exhaustion allows an agency's top level officials to correct possible mistakes made at lower levels and thereby obviate unneccessary review. Oglesby, 920 F.2d at 61; see also Taylor v. Appleton, 30 F.3d 1365, 1369 (11th Cir. 1994) ("Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors"); Martin v. Court Servs. & Offender Supervision Agency, No. 05-853, 2005 WL 3211536, at *3 (D.D.C. Nov. 17, 2005) (recognizing that administrative exhaustion "[g]ives the parties and the courts the benefit of the agency's experience and expertise").

During the administrative processing of Plaintiff's request, the DEA thoroughly searched its records (Little Decl., ¶ 47-51) and responded to Plaintiff's request (Id. ¶ 20). The DEA informed Plaintiff of the results of its search (Id. ¶ 20) & Exhibit J) and of his right to appeal their determinations (Id. ¶ 13). Despite being notified that he could appeal this decision, Plaintiff did not appeal, but instead sought judicial review. Id., ¶ 22. Under the circumstances then, Plaintiff's request for judicial review of the agencies' decision is ineffective because of his failure to pursue fully his administrative remedies. This failure to exhaust bars this Court from considering Plaintiff's FOIA request to the DEA.

## B. Plaintiff's FOIA Request Was Duplicitous and Failed to Describe the Records Sought.

While the Court should dismiss Plaintiff's claim because of his failure to exhaust, even if the Court reviews the merits of DEA's processing of Plaintiff's FOIA request, it will be clear that the DEA properly and reasonably considered Plaintiff's request and processed it appropriately. At the

21

outset, DEA found that Plaintiff's request suffered from two serious flaws: (1) it was duplicitous (Little Decl., ¶ ¶ 26-28) and (2) it did not sufficiently describe the documents requested (id., ¶¶ 29-46). Plaintiff had previously submitted two requests to the DEA. Id. ¶ 26. The requests were assigned DEA Request No. 98-1987-P and DEA Request No. 99-0777-P. Id. A FOIA release was made to Plaintiff from DEA Investigative Case File No. G3-94-0100 on or about September 1, 1998. Id. Further, a Narcotics Dangerous Drug Information System ("NADDIS") printout indicated that, since January 21, 1998, no additional information that related to Plaintiff had been added to the file. Id. Therefore, all nonexempt information related to the Plaintiff was previously made available to him pursuant to DEA FOIA Request No. 98-1987-P and DEA Request No. 99-0777-P. Little Decl., ¶ 28.

DEA reasonably construed Plaintiff's letters of June 13, 2006, and October 16, 2006, as a request for a DEA investigative report and other reports related to a seizure of 490.6 grams of cocaine on September 29, 1994, that reportedly was admitted in his criminal trial as Government Exhibit No. 6. Little Decl., ¶ 29. It is clear that the information responsive to Plaintiff's request, if it exists, is criminal investigatory data compiled for law enforcement purposes. Little Decl., ¶ 30.

Information collected pursuant to DEA's law enforcement responsibility, which generally consists of enforcement of the federal drug laws, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, is maintained in the DEA Investigative Reporting and Filing System ("IRFS"). Id. DEA investigative case files maintained in IRFS are established by the DEA office initiating an investigation. Little Decl., ¶ 31. The files are organized according to the name of the principal suspect violator or entity known to DEA at the time that the file is opened. Id. DEA does not maintain a separate dossier of investigative case files on every individual or entity that is

of investigative interest. Id.  Information gathered during the course of a DEA investigation is systematically gathered and included in the case file for a particular investigation. Little Decl., ¶ 32. This information relates to the case subject and may also include other individuals, such as those who are suspected of engaging in criminal activity in association with the subject of the file.  Id. Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, and (2) the DEA Form 7,  Report of Drug Property Collected, Purchased or Seized.  Little Decl., ¶ 33.

NADDIS is the index to, and the practical means by which, DEA retrieves investigative reports and information from IRFS. Little Decl., ¶ 41.  As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6, or other documents by the date that the document was prepared.  Id.  Minimally, to retrieve a record related to a DEA drug exhibit, inquiry must be made using the DEA investigative case file number, reflecting where the information is maintained, and the DEA exhibit number.  Little Decl., ¶¶ 40, 42.  The DEA does not index or cross reference investigative records using a Court/Criminal Case and/or Docket Number. Id., ¶ 42.  In DEA investigative case files, drug exhibits are numbered sequentially in the order of the seizure by DEA case agents.  Little Decl., ¶ 43.  Since DEA does not maintain dossier-type investigative files, and information related to any particular individual may be contained in numerous files, there may be several exhibits that relate to an individual with the same exhibit numbers, but contained in different investigative files.  Id.  Moreover, DEA does not ordinarily maintain a record of a criminal trial transcript.  Id.

Plaintiff's reference to a criminal case docket number and a trial exhibit number was insufficient to locate the requested records with a reasonable amount of effort.  Little Decl., ¶ 46.

23

Trial exhibits are numbered in the order of their being admitted into evidence in a particular case. Little Decl., ¶ 44.  Given the structure of DEA investigative case files and the manner in which exhibits are numbered, a DEA drug exhibit number assigned by DEA in investigative case file does not necessarily correspond to the Government exhibit number assigned at trial.  Id.  Plaintiff in this case is mentioned in five (5) DEA investigative case files.  Little Decl., ¶ 45.  To search each of the files based on the information initially provided by Plaintiff would be tantamount to research.  Id. Since any particular report is indexed by the date the document is prepared, the entire narrative section of the DEA Report of Investigation (ROI) or the remarks section of the DEA Report of Drug Evidence seized would need to be read to determine the date that activities occurred.  Id.  Thus, the description of the records sought by Plaintiff, contained in Plaintiff's letters dated June 13, 2006, and October 16, 2006, was insufficient to permit DEA staff to locate the requested records with a reasonable amount of effort.  Little Decl., ¶ 46.

> **C.    Despite the Flaws in Plaintiff's FOIA Request, DEA Complied With FOIA When Conducting an Adequate Search and Found No Records Responsive to Plaintiff's Requests.**

The agency's search should be reasonably calculated to uncover all responsive records. Weisberg, 745 F.2d at 1485.  Therefore, an agency should search those offices or components reasonably likely to have responsive records.  Knight v. Food & Drug Admin., 938 F. Supp. 710, 716 (D. Kan. 1996).  The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place.  Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the FOIA require that an agency search every record system.  Oglesby v Dep't. of Army, 920 F.2d

at 68.  Furthermore, the agency is not required to speculate about potential leads to the location of the responsive documents.  Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996).

Despite the flaws in Plaintiff's request, DEA undertook a search that was more than reasonable.  Based upon Plaintiff's description of the records he sought, the information was reasonably likely to be found in IRFS.  Little Decl., ¶ 47.  No other record system maintained by DEA is reasonably likely to contain the information requested by Plaintiff.  Id.  SARO conducted a NADDIS query on September 8, 2006, and did not locate any documents meeting the criteria set out in the Plaintiff's request from DEA investigative file GS-94-0100 of a DEA 7, Report of Drug Property Collected, Purchased, or Seized, and a DEA Form 6, Report of Investigation, dated September 29, 1994.  Little Decl., ¶ 48.

After failing to locate the record described by Plaintiff as DEA Drug Exhibit 6 using NADDIS, SARO contacted the DEA Atlanta, Georgia office and requested that the case agent conduct a search for the specific documents.  Little Decl., ¶ 49.  Two (2) documents, totaling four (4) pages and consisting of a DEA Form 7, dated September 14, 1994, documenting the seizure of 165.9 grams of cocaine, and a ROI dated September 15, 1994, describing a surveillance report and the acquisition of three (3) drug exhibits that included DEA Drug Exhibit 6, were forwarded to SARO by the case agent.  Id.  The pages obtained from the Atlanta, Georgia office of DEA were subsequently processed by SARO.  Little Decl., ¶ 50.  However, the information in the documents did not correspond to Plaintiff's request for information regarding Government Exhibit 6 that is related to a seizure of approximately one-half kilogram of cocaine that occurred on September 29, 1994.  Id.  The three-page ROI and a drug seizure report document an event, surveillance and seizure; the seizure involved a third-party and a coded confidential source and did not involve the

Plaintiff; the seizure occurred on a date prior to that described by the Plaintiff; and, the quantity of cocaine was different from that stated by the Plaintiff.  Id.  Accordingly, the pages are not responsive to the Plaintiff's request.  Little Decl., ¶ 51.

Through the declaration of an official responsible for responding to FOIA requests, the DEA has clearly established that it has conducted a search reasonably calculated to uncover all responsive records and that no responsive records were located.

**D.    The Declaration of William Little Is An Adequate <u>Vaughn</u> Index.**

The Declaration of William Little satisfies the fundamental legal requirements for a <u>Vaughn</u> Index.  This Declaration consists of twenty-four pages and eighty paragraphs.  It describes with particularity each document by describing, where possible, the type of document and its general subject matter.  In particular, paragraphs 77 and 78 describe the contents of all the documents at issue in this case.  Little Decl., ¶¶ 77, 78.  This information and descriptions satisfy the "reasonable basis to evaluate the claim of privilege" standard set forth in <u>Delaney</u>, 826 F.2d at 128.

**E.    DEA's Withholding Complied with Privacy Act and FOIA Exemptions.**

**1.    DEA Properly Relied on PA Exemption (j)(2)**

Notwithstanding the fact that DEA Drug Exhibit 6 and the associated ROI contained in DEA Investigative Case File No. G3-0100 did not correspond to the description of the record contained in his request, the reports found through searching IRFS relate to a third-party and, if released, could disclose the identity of a coded confidential source.  Little Decl., ¶ 52.

IRFS is a system of records under the Privacy Act that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  Little Decl., ¶ 53.  As a Privacy Act system of records, except when exempt, the conditions of disclosure are, in pertinent part, (a) pursuant to

a written request by, or with the prior written consent of, the individual to whom the record pertains

or providing proof of death, (b) unless disclosure of the record would be required under the Freedom

of Information Act, 5 U.S.C. § 552, (c) pursuant to a routine use, or (d) pursuant to the order of a

court of competent jurisdiction.  Id.

As mandated by DOJ regulations, 28 CFR § 16.3, when "making a request for records about

another individual, either a written authorization signed by that individual permitting disclosure of

those records to you or proof that the individual is deceased (example omitted) will help with the

processing of [the] request."  Little Decl., ¶ 54.  DEA has promulgated Privacy Act regulations,

pursuant to 5 U.S.C. §552a(j)(2), exempting records contained in IRFS from access. See 28 C.F.R.

§16.98(c)(3), as cited in Little Decl., ¶ 54.

Plaintiff's request pursuant to the FOIA clearly does not constitute a routine use, and Plaintiff

did not provide a release authorization or proof of death for the release of any third party

information.  Moreover, DEA has not received a court order requiring the release of the information

to Plaintiff.  Little Decl., ¶ 55.   Further, release is not required by the FOIA Exemptions (b)(2),

(b)(7)(C), (b)(7)(D), and (b)(7)(F).  Id.  Accordingly, Defendant properly withheld the requested

records under PA Exemption (j)(2).

### 2.    DEA Properly Relied on Exemption 2.

Exemption 2 justifies in part DEA's withholding of documents.  See Little Decl.,¶¶ 56-59.

The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules

and practices of any agency.  Id. ¶ 56.  Pursuant to DEA rules and practices as described in the DEA

Agents Manual, the documents requested by Plaintiff in this case contain "violator identifiers"

consisting of a G-DEP (Geographical Drug Enforcement Program) code, a NADDIS number, and

27

a DEA confidential informant code.  Little Decl., ¶ 57.  The G-DEP,  NADDIS, and confidential

informant codes are part of DEA's internal system of identifying information and individuals.  Id.

G-DEP codes are assigned to all DEA cases at the time the case file is opened and reflect the

classification of the violator, the types and amount of suspected drugs involved, the priority of the

investigation and the suspected location and scope of criminal activity.  Little Decl., ¶ 57(a).  The

release of the G-DEP code would help identify priority given to narcotic investigations, types of

criminal activities involved, and violator ratings.  Little Decl., ¶ 58.  Suspects could decode this

information and change their pattern of drug trafficking in an effort to respond to information known

to DEA, to avoid detection and apprehension and possibly to fashion alibis for suspected activities.

Id.  Disclosure of the code would, therefore, thwart the Drug Enforcement Administration's

investigative and law enforcement efforts.  Id.

NADDIS numbers are multi-digit codes assigned to drug violators and suspected drug

violators known to DEA and entities that are of investigative interest.  Little Decl., ¶ 57(b).  Each

number is unique and is assigned to only one violator within the DEA NADDIS indices.  Id.  The

NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2);

C.F.R. 16.98 (2007).  Id.  Thus, DEA relied on Exemptions (b)(7)(C) and (b)(7)(F), together with

exemption (b)(2), to justify withholding a third- party NADDIS number.  Id.

Informant identifier codes are assigned by DEA and other law enforcement agencies to

cooperating individuals and are used instead of their names in all DEA reports, memoranda and other

internal correspondence.  Little Decl., ¶ 57(c).  Informant identifier codes provide sensitive

information about individuals who cooperate with DEA and other law enforcement agencies in the

performance of their law enforcement functions.  Id.  Release of informant identifier codes could

permit individuals who present a threat to identify the informant and to learn sensitive information about individuals who cooperate with the DEA.  Id.  Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identifiers.  Id.

NADDIS numbers and confidential informant codes are unique and personal to the individual to whom the number applies.  Little Decl., ¶ 59.  They are assigned by DEA for internal use and there is no legitimate public interest in the release of these codes.  Id.  Accordingly, the DEA properly withheld the documents from disclosure under FOIA Exemption (b)(2).

### 3.    DEA Properly Relied on Exemption 7(C).

As noted, Exemption 7(C) protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  As an initial matter, DEA has the requisite law enforcement purpose within the meaning this exemption. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*. (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example,  the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.  Little Decl., ¶ 60.

DEA's mission is consistent with the range of the law enforcement purposes of other agencies that have passed judicial scrutiny regarding this threshold issue under Exemption 7.  See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), *cert*. *denied*, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.)

29

(IRS has law enforcement purpose); <u>Center to Prevent Handgun Violence v. Dep't of Treasury</u>, 981 F. Supp. 20 (D.D.C. 1997) (collecting information on all repeat handgun sales); <u>Doe v. DOJ</u>, 790 F.Supp. 17, 20-21 (D.D.C. 1992) (background investigations).  The records deemed responsive to Plaintiff's FOIA request are criminal investigative records and were compiled during criminal law enforcement investigations.  Little Decl., ¶ 61.

In addition to satisfying the general threshold requirements of Exemption 7, DEA also satisfied the specific requirements of Exemption 7 (C).  The FOIA, 5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Little Decl., ¶ 62.  The documents processed in response to Plaintiff's FOIA request contain names and other identifying information that would reveal the identity of and disclose personal information about individuals who were involved or associated with Plaintiff or with a law enforcement investigation.  <u>Id.</u>  The identities of, and information about, these individuals are protected from disclosure.  <u>Id.</u>  Those protected include third parties, suspects, co-defendants, and confidential sources of information.  <u>Id.</u>

In making the determination whether to release or withhold this information, the DEA balanced the privacy interests of these individuals against any discernible public interest in disclosure of their identities.  Little Decl., ¶ 63.  In this instance, Plaintiff made no showing of any public interest that would outweigh the privacy interests of the individuals.  <u>Id.</u>  Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.  <u>Id.</u>

In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in

the documents at issue. Little Decl., ¶ 64. The public interest in disclosure of the information was determined by whether the information in question would inform Plaintiff or the general public about DEA's performance of its mission to enforce federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. Id. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)(C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy. Id.

The identities of DEA Special Agents, DEA laboratory personnel, and other federal, state or local law enforcement officers were withheld. Little Decl., ¶ 65. Releasing their identities and any information pertaining to these individuals would place DEA Special Agents and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigation. Id. Moreover, these government employees could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Id., ¶ 67. DEA Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to an official investigation into the criminal activity of Plaintiff and other individuals. Little Decl., ¶ 66. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. Id. There is no public interest to be served by releasing the identities of these individuals. Id. Accordingly, Defendant properly withheld the documents under Exemption 7(C).

31

### 4.    DEA Properly Relied on Exemption 7(D).

DEA asserts Exemption 7(D) to withhold the DEA 7 reports in part, and the DEA 6 in its entirety, which contained information that would disclose the identity of, and the information provided by, a confidential source. Little Decl., ¶ 68.  Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state or local law enforcement investigations is, by its very nature, confidential.  Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred.  U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).  The information at issue here pertains to a coded confidential informant with an express assurance of confidentiality.  Id. ¶ 70.

Coded informants are individuals who have a continuing cooperative association, by signed, written agreement, with DEA.  Such cooperative arrangements are established and maintained according to DEA policy and procedure.  Little Decl., ¶ 71.  These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  Id.  They are also assured that their names will not be used in DEA investigative materials.  Id.  They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS.  Id.  Because of the nature of DEA's criminal investigations, any information that could identify the informant, including the informant identifier code, could subject such persons to serious harm, substantial repercussions, and possibly even death.  Little Decl., ¶ 70.

In this case, the DEA 6 and DEA 7 contain information furnished by a third-party source, who was given an explicit assurance of confidentiality. Therefore, the DEA properly applied Exemption 7(D) to justify withholding these documents.

### 5.    DEA Properly Relied on Exemption 7(F).

DEA properly relies on Exemption 7(F) to withhold the names of  DEA Special Agents, Supervisory Special Agents, United States Customs Service (USCS) Agents, other Federal law enforcement personnel, a state or local law enforcement officer, and confidential sources of information.  Little Decl.,¶ 72.  Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.  Id.  Historically, the release of DEA Special Agents' identities has resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents.  Little Decl., ¶ 74.  DEA could, therefore, reasonably anticipate that other law enforcement officers would become targets of similar abuse if they were associated with DEA's enforcement operations.  Id.  Furthermore, the DEA considers it to be within the public interest not to disclose the identities of Special Agents and investigatory and other personnel because public disclosure of this information would have a detrimental effect on the successful operation of the DEA.[3]  Little Decl., ¶ 75.  Accordingly, DEA properly applied Exemption 7(F).

---

[3] Defendant also maintains that this information is also exempt under Exemption 7 (C).

33

**F.      DEA Properly Segregated Exempt from Non-Exempt Information Where Appropriate.**

DEA's declaration specifically addresses the issue of segregability and attests to the agency's review for segregability as to all pages withheld. See Little Decl.,¶¶ 76-79. Page 1 is a DEA Form 7 and provides the details of the drugs involved in the transaction between the coded confidential source and the third-party. Id., ¶ 77. Pages "2" through "4" comprise a DEA ROI. Id., ¶ 78. The pages describe surveillance and the acquisition of drug and non-drug exhibits, relate to a drug transaction involving a third-party and contain information that would disclose the identity of and information provided by a coded informant. Id. Plaintiff's name is not mentioned on the pages, not even as part of the file's title. Id. All information withheld from disclosure describes events and incidents that would tend to reveal protected information, so further segregation was not possible without revealing protected information. Little Decl.,¶ 76. Accordingly, DEA complied with its segregation obligations pursuant to Mead Data Central.

34

## IV.    CONCLUSION

WHEREFORE, the Defendant respectfully submits that this motion for summary judgment should be granted and that the Court should enter judgment in its favor.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 616-0739

Counsel for the Defendant

35

**CERTIFICATE OF SERVICE**

I certify that copies of the foregoing Defendant's Motion for Summary Judgment, Statement

of Material Facts, Memorandum in Support of the Motion, and proposed order were served upon *pro*

*se* plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:

**ORESTE BRUZON**
**No. 43855-019**
**COLEMAN LOW**
**FEDERAL CORRECTIONAL INSTITUTION**
**Inmate Mail/Parcels**
**P.O. BOX 1031**
**COLEMAN, FL 33521**

on this 3rd day of October 2007.

_____/s/_____
OLIVER W. McDANIEL
Assistant United States Attorney
Civil Division
555 4th Street, N.W.,
Washington, D.C. 20530

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ORESTE BRUZON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 07-1393 (EGS)** |
| **DRUG ENFORCEMENT** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |
| ———————————————— | ) |

**O R D E R**

Upon consideration of the Defendant's Motion for Summary Judgment, any opposition thereto and the entire record in this case, the Court finds that the Defendant has conducted a reasonable search for information requested by Plaintiff, properly applied the exemptions, and has demonstrated that it is not withholding any responsive information. Accordingly, and for good cause shown, it is hereby

**ORDERED** that the Defendant's Motion for Summary Judgment is **GRANTED**, and it is

**FURTHER ORDERED** that judgment be entered in favor of the Defendant on all of Plaintiff's claims under the Freedom of Information Act.

Date: _____

_____
U.S. District Court Judge

**Copies to:**

Oliver W. McDaniel,
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530

Oreste Bruzon
No. 43855-019
Coleman Low
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1031
Coleman, Fl 33521

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ORESTE BRUZON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 07-1393 (EGS)** |
| **DRUG ENFORCEMENT** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |
| ——————————————— | ) |

### STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

The Drug Enforcement Administration ("DEA"), through counsel, the United States Attorney for the District of Columbia, respectfully submits this statement of material facts as to which there are no genuine disputes in accordance with this Court's Local Rule 7(h). The Declarations of William C. Little, Drug Enforcement Administration (DEA), Office of Chief Counsel, Administrative Law Section, executed on (October 3, 2007) (hereinafter "Little Decl.") and Priscilla A. Jones, Supervisory Administrative Specialist, Office of Information and Privacy ("OIP"), United States Department of Justice, executed on August 24, 2007, (hereinafter "Jones Decl.") supports this statement:

### SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

1.      By letter dated June 13, 2006, and received by DEA on June 27, 2006, Plaintiff, citing his criminal case number, requested (a) information regarding himself compiled by DEA, (2) an identification of any agencies to whom DEA released information about himself, (3) a copy of DEA regulations related to the FOIA, and (4), in a note stapled to the request, "all report investigation the exhibit #6 from 9-29-94, and 490.6 grams cocaine." Little Decl., ¶ 11. Plaintiff's note read "[t]this page is an example to Jury Trial: I need all report investigation the exhibit #6 from 9-29-94, and

490.6 grams cocaine.  This is all what I need. Thank you." Id.  See Plaintiff's letter dated June 13,

2006, with the note, attached to Little Declaration as Exhibit A.

2.      By letter to the Department of Justice, Office of Information and Privacy (OIP), dated

July 16, 2006, but received by OIP on August 4, 2006, Plaintiff purported to appeal the DEA failure

to respond to his request "for information on drug exhibits . . ." (Request No. 06-1380) outlined in

his letter dated June 13, 2006 .  Little Decl., ¶ 12; Jones Decl., ¶ 2. See Plaintiff's letter dated July

16, 2006, attached as Exhibit B to Little Declaration.

3.      By letter dated September 19, 2006, OIP informed Plaintiff that Department of Justice

regulations provide for an administrative appeal only after there has been an adverse determination

by a component, and that since no determination had yet been made, there was no action for OIP to

consider on appeal.  Little Decl., ¶ 13; Jones Decl., ¶ 2.  OIP further informed Plaintiff that he could

appeal any further adverse determination made by DEA.  Little Decl., ¶ 13.  See OIP letter dated

September 19, 2006, attached as Exhibit C to Little Declaration.

4.      By letter dated October 5, 2006, DEA acknowledged Plaintiff's request and assigned

it DEA FOIA Request No. 06-1380-P.  Little Decl., ¶ 14.  Plaintiff was informed that DEA was not

able to provide any information pertaining to his criminal case number, since it does not maintain

its system of records using court case docket numbers.  Id.  DEA stated that it would only be able

to provide investigative reports pertaining to him, if DEA participated in his investigation.  Id.

Further, Plaintiff was informed that, before it could begin processing his request, it would be

necessary for him to submit a Department of Justice (DOJ), Certificate of Identity, Form 361.  Id.

See DEA letter dated October 5, 2006,  attached to Little Declaration as Exhibit D.

5.      Plaintiff clarified by letter dated October 16, 2006, and received by DEA on October

24, 2006, that he was "seeking information as to all drug exhibits the government purported to have

2

collected during their investigation in my case," referring to his letter dated June 13, 2006, again

citing a criminal case docket number, and stating that "'Specific' I need report investigation exhibit

#6 date 9-24-94.'" Little Decl., ¶ 15. <u>See</u> Plaintiff's letter dated October 16, 2006, attached to Little

Declaration as Exhibit E.

      6.      By letter dated October 19, 2006, received by DEA on October 27, 2006, Plaintiff

again indicated – referring to testimony at trial – that he was specifically requesting an investigative

report dated September 29, 1994, regarding drug exhibit number 6 and providing a file number--G3-

94-0100. Little Decl., ¶ 16 & Exhibit F. Attached to the letter was a completed DOJ Form 361,

Certificate of Identity. <u>Id.</u>

      7.      By letter dated December 7, 2006, DEA responded and acknowledged receipt of

Plaintiff's letter dated October 16, 2006. Little Decl., ¶ 17. In addition, DEA again informed

Plaintiff that in order for his request to be processed it would be necessary for him to complete a

DOJ Form 361, Certificate of Identity and again enclosed the form. DEA informed Plaintiff that it

does not index its investigative records using a Court/Criminal Case and/or Docket Number, and that

he could assist DEA by providing the date of his arrest and/or the date of his sentencing. <u>Id.</u> See

DEA letter dated December 7, 2006, attached to Little Declaration as Exhibit G.

      8.      By letter dated December 21, 2006, Plaintiff enclosed information regarding DEA

Special Agents whom he asserted participated in the investigation resulting in his prosecution, and

portions of a transcript from his jury trial. Little Decl., ¶ 18. Plaintiff reiterated his request for an

investigative report dated September 29, 1994 and provided the completed DOJ Form 361. <u>Id.</u> <u>See</u>

Plaintiff's letter dated December 21, 2006, and the completed DEA Form 361, attached to Little

Declaration as Exhibit H.

<div align="center">3</div>

9.     By letter dated January 17, 2007, DEA acknowledged receipt of the second DOJ Form 361, reopened the request and placed it on a list of requests awaiting processing. Little Decl., ¶ 19. See DEA letter dated January 17, 2007, attached to Little Declaration as Exhibit I.

10.     By letter dated February 27, 2007,  DEA  released portions of one page to Plaintiff. Little Decl., ¶ 20.  Three pages were withheld in their entirety.  Id.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and exemption (j)(2) of the Privacy Act. Id. See DEA letter dated February 27, 2007, attached to Little Declaration as Exhibit J.

11.     By letter dated March 12, 2007, Plaintiff stated that he did not receive the page forwarded by DEA by letter dated February 27, 2007.  Little Decl., ¶ 21.  Plaintiff requested that DEA forward him a copy of the requested documents.  Id.  See Plaintiff's letter dated March 12, 2007, attached to Little Declaration as Exhibit K.

12.     There is no record that Plaintiff appealed the February 27, 2007 DEA determination prior to bringing this action.  Little Decl., ¶ 22; Jones Decl., ¶ 2. The DEA Freedom of Information Operations Unit (referred to at DEA and hereinafter referred to as "SARO") is the DEA office responsible for responding to, searching for, and processing and releasing information requested under the FOIA and PA.  Little Decl., ¶¶ 9, 10.  Before the re-release by SARO of the page that Plaintiff complains he did not receive, Plaintiff filed this action.  Little Decl., ¶ 23.  Thereupon, the SARO file associated with Plaintiff's request was forwarded, along with the responsibility for responding to Plaintiff's request, to the DEA Office of Chief Counsel.  Attorney William Little of that Office was assigned to the matter.  Id.

13.     Upon reviewing Plaintiff's letters and the documents initially identified by SARO as potentially responsive, Mr. Little determined that, based upon Plaintiff's requests as gleaned from

all his correspondence, the documents were not responsive to Plaintiff's request, that Plaintiff's letters

dated June 13, 2006, and October 16, 2006, did not reasonably describe DEA records in sufficient

detail to allow DEA to locate the records with a reasonable amount of effort.  Mr. Little also

determined that Plaintiff previously had submitted a similar request for information related to him

and that his June and October 2006 letters duplicated his prior request. He further concluded that the

records described by Plaintiff, consisting of DEA investigative and evidence reports, from DEA

Investigative Case File No. G3-94-0100 related to Government Exhibit 6, a trial exhibit, did not meet

the quantity or date description provided by Plaintiff, and were otherwise exempt from disclosure

under exemption (j)(2) of the PA, and exemptions (b)(7)(C), (b)(7)(D) and (b)(7)(F) of the FOIA,.

Little Decl., ¶ 25.  Thus, DEA concluded that it need not release any additional documents to

Plaintiff.  Id.

14.    DEA records indicate that, in response to a previous request from Plaintiff, assigned

DEA FOIA Request 98-1987-P, it released information to Plaintiff regarding himself, on or about

September 30, 1998. Little Decl., ¶ 25.  Although the SARO FOIA file no longer exists, none of the

investigative case files that contain information related to Plaintiff have been updated since April

26, 1997.  Id.  Moreover, any information provided to Plaintiff would have included only all non-

exempt information related to Plaintiff contained in DEA Investigative Case File No. G3-94-0100.

Id.

15.    Plaintiff's letters of June 13, 2006, and October 16, 2006, were construed as a request

for a DEA investigative report and other reports related to a seizure of 490.6 grams of cocaine on

September 29, 1994, that was admitted in his criminal trial as Government Exhibit No. 6.  Little

Decl., ¶ 29.

16. The information responsive to plaintiff's request, if it exists, is criminal investigatory data compiled for law enforcement purposes. Little Decl., ¶¶ 30-33. Information collected pursuant to DEA's law enforcement responsibility, which is the enforcement of the federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, is maintained in the DEA Investigative Reporting and Filing System ("IRFS"). Id.

18. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. Little Decl., ¶ 41. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6, or other documents by the date that the document was prepared. Id.

19. At a minimum, to retrieve a record related to a DEA drug exhibit, the DEA investigative case file number where the information is maintained and the DEA exhibit number is required. Little Decl., ¶¶ 40, 42. DEA does not index or cross reference investigative records using a Court/Criminal Case and/or Docket Number. Id. ¶ 42.

20. SARO conducted a NADDIS query on September 8, 2006, and did not locate any documents meeting the criteria set out in the plaintiff's request from DEA investigative file GS-94-0100 of a DEA 7, Report of Drug Property Collected, Purchased, or Seized, and a DEA Form 6, Report of Investigation, dated September 29, 1994. Little Decl., ¶ 48.

21. After failing to locate the record described by the plaintiff as DEA Drug Exhibit 6 using NADDIS, SARO contacted the DEA Atlanta, Georgia office and requested that a case agent conduct a search for the specific documents. Little Decl., ¶ 49. Two (2) documents, totaling four (4) pages and consisting of a DEA Form 7, dated September 14, 1994, documenting the seizure of

165.9 grams of cocaine, and a ROI dated September 15, 1994, describing a surveillance report and the acquisition of three (3) drug exhibits that included DEA Drug Exhibit 6, were forwarded to SARO by the case agent.  Id.

22.    The pages obtained from the DEA Atlanta, Georgia office were subsequently processed by SARO.  Little Decl., ¶ 50.  The information on the pages does not correspond to the plaintiff's request for information regarding Government Exhibit 6 that related to a seizure of approximately one-half kilogram of cocaine that occurred on September 29, 1994.  Id.  The three-page ROI and a drug seizure report document an event, surveillance and seizure; the seizure involved a third-party and a coded confidential source and did not involve the plaintiff; the seizure occurred on a date prior to that described by the plaintiff; and, the quantity of cocaine was different from that stated by the plaintiff.  Id.

23.    Notwithstanding the fact that DEA Drug Exhibit 6 and the associated ROI contained in DEA Investigative Case File No. G3-0100 did not correspond to the description of the material contained in Plaintiff's request, the reports contained in IRFS relate to a third-party, who may be a coded confidential source.  Little Decl., ¶ 52.

24.    Informant identifier codes are assigned by DEA and other law enforcement agencies to cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence.  Little Decl., ¶ 57(c).  Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions.  Id.

25.    The documents processed in response to Plaintiff's FOIA request contain names and other identifying information which would reveal the identity of and disclose personal information

about individuals who were involved or associated with Plaintiff or with a law enforcement investigation. Little Decl., ¶ 62. These individuals include third parties, suspects, co-defendants, and confidential sources of information. Id.

26.    Sources of information include those to whom express confidentiality was granted and those about whom, based upon the facts and circumstances, confidentiality could be implied. Little Decl., ¶ 69.

27.    The information at issue here pertains to a coded confidential informant with a express assurance of confidentiality. Little Decl., ¶ 70.

28.    Coded informants are individuals who have a continuing cooperative association, by written signed agreement, with DEA. Such cooperative arrangements are established and maintained according to DEA policy and procedure. Little Decl., ¶ 71. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. Id. They are also assured that their names will not be used in DEA investigative materials. Id. They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS. Id.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
October 3, 2007                    Assistant United States Attorney

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORESTE BRUZON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 07-1393 EGS |
| DRUG ENFORCEMENT ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

## DECLARATION OF WILLIAM C. LITTLE, JR.

I, William C. Little, Jr., hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an Attorney admitted in and a member in good standing in the Bar of the State of Pennsylvania.

2. I am currently employed as a practicing attorney by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), where I am assigned to the Office of Chief Counsel, Administrative Law Section.

3. Within the DEA Office of Chief Counsel, I am the attorney responsible for matters involving the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, in which DEA is an interested party. I have served in this capacities since about April 26, 1999.

4. As an attorney, I have been involved in FOI/PA since 1994. I have received formal and on the job training in the FOI/PA, and the administration of Federal records and PA Systems of Records.

5. I am familiar with the DEA policies, practices and procedures regarding the administration of, and the processing and release of information requested under the FOIA and PA, and DEA PA Systems of Records.

6. I am responsible for review, for litigation purposes, of both the initially processed and appealed FOI/PA requests that are received by DEA, and for providing litigation support for all matters arising under the FOIA and the PA in which DEA is an interested party.

7. In defense of FOI/PA actions, I am responsible for taking remedial action when ordered by courts or when deficiencies in responding to, processing or release of information are discovered in the course of litigation review.

8. I prepare, and review and supervise the preparation of, affidavits, declarations, responses to discovery motions, interrogatories and other court pleadings, and perform all necessary legal research on issues arising during the course of the prosecution or defense of FOI/PA actions in which DEA is a party.

9. In the preparation of this declaration, I read and am familiar with the pleadings in this case, and the files maintained by the DEA Freedom of Information Operations Unit (SARO).

10.  SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA received by DEA.  I am also familiar with the policies, practices and procedures SARO employs that relate to the search for, and the processing and release of information responsive to FOIA/PA requests received by DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

11.  By letter dated June 13, 2006, and received by DEA on June 27, 2006, the plaintiff, citing his criminal case number, requested (a) information regarding himself compiled by DEA, (2) an identification of any agencies to whom DEA released information about himself, (3) a copy of DEA regulations related to the FOIA, and (4), in a note stapled to the request, "all report investigation the exhibit #6 from 9-29-94, and 490.6 grams cocaine."  The plaintiff's note read "[t]this page is an example to Jury Trial: I need all report investigation the exhibit #6 from 9-29-94, and 490.6 grams cocaine.  This is all what I need.  Thank you."  Copies of the plaintiff's letter dated June 13, 2006, and the note, are attached as Exhibit A.

12.  By letter dated July 16, 2006, to the Department of Justice, Office of Information and Privacy (OIP) received by OIP on August 4, 2006, the plaintiff appealed the DEA failure to

respond to his request "for information on drug exhibits . . ." outlined in his letter dated June 13,

2006.  A copy of the plaintiff's letter dated July 16, 2006, is attached as Exhibit B.


13.  By letter dated September 19, 2006, OIP informed the plaintiff that Departments of Justice

regulations provide for an administrative appeal only after there had been an adverse

determination by a component, and that since no determination had yet been made, there was no

action for OIP to consider on appeal.  OIP further informed the plaintiff that he could appeal any

further adverse determination made by DEA.  A copy of the OIP letter dated September 19, 2006,

is attached as Exhibit C.


14.  By letter dated October 5, 2006, DEA acknowledged the plaintiff's request and assigned it

DEA FOIA Request No. 06-1380-P.  The plaintiff was informed that DEA was not able to

provide any information pertaining to his criminal case number, since it does not maintain its

system of records using court case docket numbers.  DEA stated that it would only be able to

provide investigative reports pertaining to him, if DEA participated in his investigation.  Further,

the plaintiff was informed that, before it could begin processing his request, it would be

necessary for him to submit a Department of Justice (DOJ), Certificate of Identity, Form 361.  A

copy of the DEA letter dated October 5, 2006,  is attached as Exhibit D.


15.  In a  letter dated October 16, 2006, and received by DEA on October 24, 2006, the plaintiff,

referring to his letter dated June 13, 2006, stated that he was "seeking information as to all drug

exhibits the government purported to have collected during their investigation in my case," again

citing a criminal case docket number, and stating that "'Specific' I need report investigation

-4-

exhibit #6 date 9-24-94.'"  A copy of the plaintiff's letter dated October 16, 2006, is attached as Exhibit E.

16.  By letter dated October 19, 2006, received by DEA on October 27, 2006, the plaintiff again indicated, and referring to testimony at trial, that he was specifically requesting an investigation report dated September 29, 1994, regarding drug exhibit number 6 and providing a file number-- G3-94-0100. Attached to the letter was a completed DOJ Form 361, Certificate of Identity.  A copy of the plaintiff's letter dated October 19, 2006, is attached as Exhibit F.

17.  By letter dated December 7, 2006, DEA acknowledged receipt of the plaintiff's letter dated October 16, 2006.  DEA again informed the plaintiff that in order for his request to be processed it would be necessary for him to complete a DOJ Form 361, Certificate of Identity.  DEA again enclosed the form, informed the plaintiff that it does not index its investigative records using a Court/Criminal Case and/or Docket Number, and that he could assist DEA by providing the date of his arrest and/or the date of his sentencing.  A copy of the DEA letter dated December 7, 2006, is attached as Exhibit G.

18.  By letter dated December 21, 2006, the plaintiff enclosed information regarding a DEA Special Agents who he asserted participated in the investigation which resulted in his prosecution, and portions of a transcript from his jury trial.  The plaintiff reiterated his request for an investigative report dated September 29, 1994 and provided the completed DOJ Form 361.  A

copy of the plaintiff's letter dated December 21, 2006, and the completed DEA Form 361 is attached as Exhibit H.

19.  By letter dated January 17, 2007, DEA acknowledged receipt of the second DOJ Form 361, reopened the request and placed it on a list of requests waiting processing.  A copy of the DEA letter dated January 17, 2007, is attached as Exhibit I.

20.  By letter dated February 27, 2007,  DEA  released portions of one page to the plaintiff. Three pages were withheld in their entirety.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and exemption (j)(2) of the Privacy Act. A copy of the DEA letter dated February 27, 2007, is attached as Exhibit J.

21.  By letter dated March 12, 2007, the plaintiff stated that he did not receive the page forwarded by DEA by letter dated February 27, 2007.  The plaintiff requested that DEA forward him a copy of the requested documents.  A copy of the plaintiff's letter dated March 12, 2007, is attached as Exhibit K.

22.  There is no record that the plaintiff appealed the February 27, 2007, DEA determination prior to bringing this action.

23.  Prior to the re-release by SARO of the page that the plaintiff complains he did not receive, the plaintiff filed this action.  The SARO file was forwarded and the responsibility to respond to

the plaintiff's request was transferred to the DEA Office of Chief Counsel, and the matter

assigned to me for action.  As of the date of this declaration, there is no record that the plaintiff

appealed the DEA determination to OIP

24.  I reviewed all the correspondence, the file documentation, the printout of the Narcotics and

Dangerous Drug Information System (NADDIS) query conducted on September 8, 2006, and the

SARO FOIA Data Base contained in the SARO file.

25.  Upon conducting a litigation review of the plaintiff's letters and the documents identified

by SARO as responsive, I determined that based upon the plaintiff's description contained in all

his correspondence, (a) the plaintiff previously submitted a request for information related to

himself and the request, *sub judice,* is duplicitous, (b) the documents were not responsive to the

plaintiff's request; that the plaintiff's letters dated June 13, 2006, and October 16, 2006, (c) the

request did not reasonably describe records sufficient to allow DEA to locate the records with a

reasonable amount of effort; and (d) the records, described by the plaintiff as maintained in

DEA Investigative Case File No. G3-94-0100 as Drug Exhibit 6 and supporting ROI, were

otherwise withholdable pursuant to the PA, Exemption (j)(2) and the FOIA, Exemptions

(b)(7)(C), (b)(7)(D) and (b)(7)(F).  Thus, no re-release will be made to the plaintiff.

## PLAINTIFF'S REQUEST WAS DUPLICITOUS

26.  SARO maintains a data base of all requests received by DEA.  At the time a request is

received, the name of the requester and identifying information is entered into the system.  The

results of a query conducted on August 2, 2006, were that the plaintiff submitted requests on two

(2) prior occasions. The requests were assigned DEA Request No. 98-1987-P and DEA Request

No. 99-0777-P.

27. On September 8, 2002, a NADDIS query was also conducted using the plaintiff's name, date

of birth and social security number. The result of the query was that a FOIA release was made to

the plaintiff from DEA Investigative Case File No. G3-94-0100 on or about September 1, 1998.

Further, the NADDIS printout indicates that, since January 21, 1998, no additional information

related to the plaintiff has been added to the file.

28. Although the SARO FOIA files no longer exist,[1] all nonexempt information related to the

plaintiff was previously made available to the plaintiff pursuant to DEA FOIA Request No. 98-

1987-P and DEA Request No. 99-0777-P.

## PLAINTIFF'S DESCRIPTION OF THE RECORD WAS INSUFFICIENT
### Description of DEA Investigative Files and Records

29. The plaintiff's letters June 13, 2006, and October 16, 2006, were construed as a request for a

DEA investigative report and other reports related to a seizure of 490.6 grams of cocaine on

September 29, 1994, that was admitted in his criminal trial as Government Exhibit No. 6.

30. The information responsive to the plaintiff's request, if it exists, is criminal investigatory

data compiled for law enforcement purposes. Information collected pursuant to DEA's law

---

[1] DEA FOIA files are maintained for 6 years after the final response. The files related to
the plaintiff's FOIA requests were destroyed in 2004 and 2005, respectively.

enforcement responsibility, which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, is maintained in the DEA Investigative Reporting and Filing System (IRFS).

31.  DEA investigative case files maintained in IRFS are established by the office commencing an investigation.  The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened.  DEA does not maintain a separate dossier investigative case files on every individual or entity that is of investigative interest.

32.  Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file.  This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

33.  Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, and (2) the DEA Form 7,  Report of Drug Property Collected, Purchased or Seized.

34.  The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities and information.  The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative and intelligence information is recorded.

35. The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section, in which investigative and intelligence information is recorded, that extends to the bottom of the page.

36. The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier. The DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The DEA Form 6, Block 6, and DEA Form 6a, Block 3, contain the file title, which is generally the subject of the investigation.

37. The narrative may be broken up into several sections that may include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections. The "Synopsis" and "Details" sections document events that often contain names of third parties and law enforcement personnel, and information about individuals. The "Evidence" section is used to document and note the collection of evidence and the disposal of items.

38. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS. .In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

39. The DEA Form 7, Report of Drug Property Collected, Purchased or Seized, includes a description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison

report. The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5, the file title; Block 9, the Exhibit No. is assigned to the substance in the order of collection; Blocks 10 - 15 contain details regarding the exhibit, including the type and amount of the substance seized; Block 16, the "Remarks," contains descriptive information that may include names of law enforcement officers and third parties, and other information regarding the seizure; and, Blocks 17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or signatures of DEA Special Agents, other law enforcement personnel or DEA employees.

40. The DEA investigative file number and drug exhibit number is necessary to locate information related to any particular DEA exhibit.

41. The NADDIS is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and a particular DEA ROI or other documents by the date that the document was prepared.

42. At a minimum, to retrieve a record related to a DEA drug exhibit, the DEA investigative case file number and the DEA exhibit number are required. DEA does not index or cross reference investigative records using a Court/Criminal Case and/or Docket Number.

43. In DEA investigative case files, the drug exhibits are numbered sequentially in the order of the seizure by DEA case agents. Since DEA does not maintain dozier type investigative files and information related to any particular individual may be contained in numerous files, there may be several exhibits that relate to an individual with the same exhibit numbers, but contained in

different the investigative files.  Moreover, DEA does not ordinarily maintain a record of a

criminal trial transcript.

## Reference to a Criminal Case Docket No. And Trial Exhibit is Insufficient

44.  Trial exhibits are numbered in the order of their being admitted into evidence in a particular

case.  Given the structure of DEA investigative case files and the manner in which exhibits are

numbered, a DEA drug exhibit number assigned by DEA'S in investigative case file does not

necessarily correspond to the Government exhibit number assigned at trial.

45.  The plaintiff in this case is mentioned in five (5) DEA investigative case files.  To search

each of the files based on the information initially provided by the plaintiff would involve an

unreasonable search that is tantamount to research.  Since any particular report is indexed by the

date the document is prepared, the entire narrative section of the DEA ROI or the remarks section

of the DEA Report of Drug Evidence seized would need to be read to determine the date that

activities occurred.

46.  Thus, the plaintiff's description of a trial exhibit was not sufficient to allow a DEA FOIA

processor to locate the record with a reasonable amount of effort.

## PREVIOUSLY IDENTIFIED INFORMATION IS NOT RESPONSIVE
### Adequacy of the Search

47.  Based upon the plaintiff's description of the records he was seeking, the information was

reasonably likely to be found in IRFS.  No other record system maintained by DEA is reasonably

likely to contain the information requested by the plaintiff.

-12-

48.  SARO conducted a NADDIS query on September 8, 2006, and did not locate any documents

meeting the criteria set out in the plaintiff's request from DEA investigative file GS-94-0100 of

a DEA 7, Report of Drug Property Collected, Purchased, or Seized, and a DEA Form 6, Report

of Investigation, dated September 29, 1994.

49.  After failing to locate the record described by the plaintiff as DEA Drug Exhibit 6 using

NADDIS, SARO contacted the DEA Atlanta, Georgia office and requested that the case agent

conduct a search for the specific documents.  Two (2) documents, totaling four (4) pages and

consisting of a DEA Form 7, dated September 14, 1994, documenting the seizure of 165.9 grams

of cocaine, and a ROI dated September 15, 1994, describing a surveillance report and the

acquisition of three (3) drug exhibits that included DEA Drug Exhibit 6, were forwarded to

SARO by the case agent.

50.  The pages obtained from the DEA Atlanta Georgia office were subsequently processed by

SARO.  The information on the pages does not correspond to the plaintiff's request for

information regarding Government Exhibit 6 that related to a seizure of approximately one-half

kilo of cocain that occurred on September 29, 1994.  The three-page ROI and a drug seizure

report document an event, surveillance and seizure; the seizure involved a third-party and a

coded confidential source that did not involve the plaintiff; the seizure occurred on a date prior to

that described by the plaintiff; and, the quantity of cocaine was different from that stated by the

plaintiff.

51. Accordingly, the pages are not responsive to the plaintiff's request.

## WITHHOLDING PURSUANT TO PA EXEMPTION (j)(2) AND FOIA EXEMPTIONS (b)(2), (b)(7)(C) AND (b)(7)(D)

52. Notwithstanding the fact that DEA Drug Exhibit 6 and the associated ROI contained in DEA Investigative Case File No. G3-0100 does not correspond with the description of the record contained in his request, the reports contained in IRFS relate to a third-party and, if released, could disclose the identity of a coded confidential source.

53. IRFS is a Privacy Act System of Records that was last reported at 77 Fed. Reg. 3410 and last published in its entirety at 61 Fed. Reg. 54219. As Privacy Act systems of records, except when exempt, the conditions of disclosure are, in pertinent part, (a) pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains or providing proof of death, (b) unless disclosure of the record would be required under the Freedom of Information Act, 5 U.S.C. § 552, (c) pursuant to a routine use, or (d) pursuant to the order of a court of competent jurisdiction.

54. The DOJ Agency Rules, 28 CFR § 16.3, also require as a requisite, in pertinent part, that when "making a request for records about another individual, either a written authorization signed by that individual permitting disclosure of those records to you or proof that the individual is deceased (example omitted) will help with the processing of your request." In accordance with

-14-

the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records

contained in IRFS from access. *See* 28 C.F.R. §16.98(c)(3).

55.  No routine use exists for the release of information, the plaintiff did not provide a release

authorization or proof of death for the release of any third-party information, and no court order

has been received by DEA requiring the release of the information to the plaintiff. Further,

release is not required by the FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D) and (b)(7)(F).

<u>**Internal Rules and Practices**</u>
<u>**FOIA Exemption (b)(2)**</u>

56.    The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the

internal rules and practices of any agency.

57.    Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, the pages in

this case contain "violator identifiers" consisting of a G-DEP (Geographical Drug Enforcement

Program) code, a NADDIS number, and a DEA confidential informant code.  The G-DEP,

NADDIS, and confidential informant codes are part of DEA's internal system of identifying

information and individuals.

   (a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and

   indicate the classification of the violator, the types and amount of suspected drugs

   involved, the priority of the investigation and the suspected location and scope of

   criminal activity.

(b)  NADDIS numbers are multi-digit numbers assigned to drug violators and suspected

drug violators known to DEA and entities that are of investigative interest.  Each number

is unique and is assigned to only one violator within the DEA NADDIS indices.  (The

NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. §

552a(j)(2); C.F.R. 16.98 (2007).  Thus, Exemptions (b)(7)(C) and (b)(7)(F) were used in

conjunction with (b)(2) to withhold a third-party NADDIS number.

(c)  Informant identifier codes are assigned to DEA and other law enforcement agencies

to cooperating individuals and are used instead of their names in all DEA reports,

memoranda and other internal correspondence.  Informant identifier codes provide

sensitive information about individuals who cooperate with DEA and other law

enforcement agencies in carrying out their law enforcement functions.  Knowledge of

informant identifier codes can assist in identifying the informant and provide sensitive

information about individuals who cooperate with DEA in carrying out its law

enforcement functions.  Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in

conjunction with (b)(2) to withhold these identifiers.

58.  The release of the G-DEP code would help identify priority given to narcotic investigations,

types of criminal activities involved, and violator ratings.  Suspects could decode this

information and change their pattern of drug trafficking in an effort to respond to what they

determined DEA knows about them or avoid detection and apprehension and create alibis for

suspected activities.  Disclosure of the code would, therefore, thwart the Drug Enforcement

Administration's investigative and law enforcement efforts.

-16-

59.    NADDIS numbers and confidential informant codes are unique and personal to the

individual to whom the number applies.  They are assigned by DEA for internal use and there is

no public interest in the release of these codes.

### Records or Information Compiled for Law Enforcement Purposes
### FOIA Exemption (b)(7) Threshold

60.    DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention

and Control Act of 1970, 21 U.S.C. § 801, *et seq.* (hereinafter, the Act) which authorizes DEA to

enforce the Act through, for example,  the investigation of incidences involving the trafficking in

controlled substances, dangerous drugs and precursor chemicals and the violators who operate at

interstate and international levels; seize and forfeit assets derived from, traceable to, or intended

to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange

information in support of drug traffic prevention and control.

61.    The records deemed responsive to the plaintiff's FOIA request are criminal investigative

records.  The records were compiled during criminal law enforcement investigations of the

plaintiff and several third parties.

### Invasion of Personal Privacy

### FOIA Exemption (b)(7)(C)

62.    The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

constitute an unwarranted invasion of personal privacy.  The documents processed in response to

the plaintiff's FOIA request contain names and other identifying information which would reveal

the identity of and disclose personal information about individuals who were involved or

associated with the plaintiff or with a law enforcement investigation. The individuals are

protected from the disclosure of their identities and information about them. These individuals

include third parties, suspects, co-defendants, and confidential sources of information.


63.    In making the determination to release or withhold this information, the individuals'

privacy interests were balanced against any discernible public interest in disclosure of the

individuals' identities. In this instance, the plaintiff provided no facts to show any public interest

for which any potential public interest would outweigh the privacy interests of the individuals.

Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.


64.    In asserting this exemption, each piece of information was examined to determine the

degree and nature of the privacy interest of any individual whose name and/or identifying data

appeared in the documents at issue. The public interest in disclosure of the information was

determined by whether the information in question would inform the plaintiff or the general

public about DEA's performance of its mission to enforce Federal criminal statutes and the

Controlled Substance Act, and/or how DEA conducts its internal operations and investigations.

In this case, it was determined that there was no legitimate public interest in the information

withheld under exemption (b)(7)C), and release of any information about a third party would

constitute an unwarranted invasion of that third party's personal privacy.

65.   The identities of DEA Special Agents, DEA laboratory personnel, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigation.

66. The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of these individuals.

67. Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

**Confidential Sources and Information Obtained from Confidential Sources**

**FOIA Exemption (b)(7)(D)**

68.   The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled

for law enforcement purposes the disclosure of which could reasonably be expected to reveal the

identity of a confidential source and/or information furnished by a confidential source.

Exemption (b)(7)(D) was employed to withhold the DEA 7 reports in part, and the DEA 6 in its

entirety, which contained information that would disclose the identity of and the information

provided by the source.


69.  Sources of information include those to whom express confidentiality were granted and

those about whom, based upon the facts and circumstances, confidentiality could be implied.

Each document  that contains material provided by individual(s), other than a DEA agent, was

examined in light of exemption (b)(7)(D) to determine whether confidentiality was express or

implied.


70.  As an agency charged with law enforcement authority, DEA relied on the (b)(7)(D)

exemption to protect source-identifying and source-supplied investigative information.  The

information at issue here pertains to a coded confidential informant with an express assurance of

confidentiality.  Because of the nature of DEA's criminal investigations, any information that

could identify the informant, including the informant identifier code, could subject them to

serious harm, substantial repercussions, and possibly even death.

## Express Confidentiality - Coded Informants

71.   Coded informants are individuals who have a continuing cooperative association, by
written signed agreement, with DEA.  Such cooperative arrangements are established and
maintained according to DEA policy and procedure.  These individuals are expressly assured
confidentiality in their identities and the information they provide to DEA.  They are also assured
that their names will not be used in DEA investigative materials.  They are assigned an
identification code which is used in place of their name or referred to as CI, SOI, or CS.

## Safety of Law Enforcement Personnel and Other Individuals

## FOIA Exemption (b)(7)(F)

72.   The names of  DEA Special Agents, other Federal law enforcement personnel, a state/local
law enforcement officer, and confidential sources were withheld in accordance with 5 U.S.C. §
552 (b)(7)(F).  Exemption (b)(7)(F) sets forth an exemption for records or information compiled
for law enforcement purposes the disclosure of which could reasonably be expected to endanger
the life or physical safety of an individual.

73.   DEA Special Agents and Supervisory Special Agents, as well as members of other law
enforcement entities, are frequently called upon to conduct a wide variety of investigations,
including sensitive and dangerous undercover operations.

74.   Special Agents routinely approach and associate with violators in a covert capacity.  Many
of those violators are armed and many have known violent tendencies.  It has been the experience

of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents.  It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

75.   In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm.  DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments.  These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs.  Public disclosure of the identities of investigatory and other personnel, as well as confidential sources of information, would have a detrimental effect on the successful operation of DEA,  as well as risk harassment and danger to its agents other law enforcement personnel, and confidential sources of information.  This information was also withheld pursuant to Exemption (b)(7)(C).

**Segregability**

76.   All of the responsive information was examined to determine whether any reasonably segregable information could be released.  Pages were withheld in their entirety where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on

-22-

how the Government conducts business, (2) could result in compromising the identity of and

information provided by sources of information who were granted express confidentiality or,

because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted

invasion of personal privacy when balanced against the public interest in the release of

information gathered during the course of a criminal investigation, and/or (4) place in jeopardy

the lives and safety of third parties which includes sources of information, individuals associated

with or mentioned in the investigative reports, and DEA agents and other law enforcement

personnel.

77. Page 1 is a DEA Form 7. The page provides the details of the drugs involved in the

transaction between the coded confidential source and the third-party.

78. Pages "2" through "4" comprise a DEA ROI. The pages describe surveillance and the

acquisition of drug and non-drug exhibits, relate to a drug transaction involving a third-party and

contain information that would disclose the identity of and information provided by a coded

informant. The plaintiff's name is not mentioned on the pages, even as the file title.

79. After eradicating all exempt information all that would remain on the pages is

incomprehensible words and phrases that would not shed any light on how the Government

conducts business. Thus, no segregable information would remain.

80. Therefore, as a PA system of records which is exempt from access,  the release of the

information requested by the plaintiff would violate the Act, since release is not required by the

FOIA.


The subject of this declaration and the statements set forth herein are true and correct either on

the basis of my personal knowledge or on the basis of information acquired by me through the

performance of my official duties.


_Oct 3, 2007_

    DATE

William C. Little, Jr.
Senior Attorney
Office of Chief Counsel
Administrative Law Section
Drug Enforcement Administration
Washington, D.C.  20537

# EXHIBIT A

TO: DEAR SIR OR MADAM:

    FREEDOM OF INFORMATION OPERATION

    UNIT, DRUG ENFORCEMENT ADMINISTRATION

    DEPARTMENT OF JUSTICE

    700 ARMY NAVY DRIVE

    ARLINGTON VA 22202
    ==================================

RE: U.S.ORETES BRUZON:A.K.A. SANTO

CASE NO: 1:95-CR-537

DEAR SIR /MADAN

PURSUANT TO 5,U.S.C., 552 AND THE RELEVANT PROVISIONS OF YOUR AGENCY REGULATION COVERING ACCESS TO THE RIGHT OF INFORMATION. I HEREBY IDENTIFY MYSELF:

I NOW MAKE THIS REQUEST FOR THE ENTIRE CENTRAL FILE THAT YOUR AGENCY AND OTHER AGENCIES UNDER YOUR SUPERVISION REFERRED TO HEREINAFTER, HAS COMPLIED TO DATE RELATING TO ME AND A LISTING OF WHOMEVER YOUR AGENCY OR OTHER BRANCHES UNDER YOUR SUPERVISION MAY GAVE DISSEMINATED THIS FILE OR ANY PORTION THEREOF TO;THE REASON FOR SUCH DISSEMINATION; AND THE SAME OF THE PERSON AND HIS TITLE REQUESTING SAME, I WOULD LIKE THIS REQUEST TO BE FURNISHED AS COMPLETED **AS PERMITTED:** **PURSUANT TO SECTION (D) (1) OF THE PRIVACY ACT OF 1974.** I WOULD ALSO LIKE TO HAVE A COPY OF THE APPLICABLE REGULATIONS OF YOUR AGENCY AS PROVIDED FOR BY THE FREEDOM OF INFORMATION ACT SO THAT I MAY ADHERE TO THE APPROVED RULES AND REGULATIONS FOR YOUR AGENCY.

AS YOU KNOW, INVESTIGATION RECORDS COMPILED FOR LAW ENFORCEMENT AGENCIES ARE NO LONGER GENERALLY EXEMPTED FROM DISCLOSURE, BUT MAY BE INSPECTED BY THE COURTS TO DETERMINE WHETHER THEY FALL WITHIN ANY OF THE SIX (6) SPECIFIED EXEMPT CATEGORIES OF INVESTIGATING RECORDS DESCRIBED IN THE ACT.

PROSECUTOR AND RAUL MORALES AN JURY TRIAL:

**PAGE #437 LINES 17 TO25:**

CALLED AS A WITNESS BY THE UNITED STATES, AFTER HAVING FIRST BEEN DULY SWORN,
TESTIFIED AS FOLLOWS: **RAUL MORALES.**

**PROSECUTOR AND MORALES:**

PAGE #440 LINES 9 TO 10, PROSECUTOR. MR. MORALES, I M GOING TO SHOW YOU SEVERAL
EXHIBIT AT ONE TIME ONE IS MARKED GOVERNMENT **"EXHIBIT #6,"**ONE IS MARKED.LINE 21
THE GOVERNMENT **"EXHIBIT IS 6."** LINE 22 WILL ASK YOU TO START WITH 6.LINE 23 FOR
A MOMENT.WITH RESPECT TO GOVERNMENT **"EXHIBIT 6,"** CAN YOU TELL ME WHETHER OR NOT
THAT PACKAGE, GOVERNMENT **"EXHIBIT 6,."** IS FAMILIAR TO YOU? (CONTINUE) PAGE 445
LINES 1 TO 5, **MORALES:** I DID. **PROSECUTOR** WHAT IS THAT OPINION? **MORALES** ONE TIME
I FOUND DRUG HYDROCHCORIDE WITH A STRENGTH OF 80 PERCENT, AND THE **"NET WEIGHT,**
JUST THE WHITE SUBSTANCE, 83.6 GRAMS.

PROSECUTOR AND RAUL MORALES

**PAGE #442 LINE 20 TO 25.** PROSECUTOR: AND WHAT WAS THE WEIGHT? MORALES: 490.6GRAMS.
**PAGE443 LINES 7** PROSECUTOR: TO SAME WAY AS **"EXHIBIT** 6? MORALES YES.LINE 23
**"EXHIBIT6.**

ATTORNEY DEFENDANT AND MORALES:

**PAGE #445 LINES 21 TO 25,** ATTORNEY: WAS IT **"EXHIBIT #6"**THAT YOU IDENTIFIED AS
CONTAINING THE ROUGHLY 490 GRAMS OF THE DRUG AN I CORRECT ABOUT THAT? MORALES THE
BIGGEST NUMBER YES **"EXHIBIT 6.** **ATTORNEY:** AND ALL THIS IS **"EXHIBIT 6.? MORALES:**
**THERE NO 6-A?** MORALES: NOT IN THIS CASE NO. **NOTE: 6-A IS DOE NOT FINGERPRINT**
"EXHIBIT #6.

THE GOVERNMENT SAY EXHIBIT #6 IS
THE COUNT #3 9-29-94 INDICTMENT

IF FOR REASON IT IS BELIEVED THAT PORTIONS OF THE MATERIAL REQUESTED IS EXEMPT UNDER THE FREEDOM OF INFORMATION ACT **OR** THE PRIVACY **ACT** OF 1974. INITIALLY I CONSENT TO THE ISSUANCE OF AN ABRIDGED COPY DELETING ANY ALLEGEDLY EXEMPT MATERIAL.

THIS INITIAL CONSENT IS DESIGNATED TO OBTAIN DOCUMENTS REQUIRED AS QUICKLY AS POSSIBLE, AND IN NO WAY WAIVES MY RIGHT TO THE ENTIRE FILE WHICH AFTER I EXAMINE THE MATERIAL YOU DECIDE TO SEND, I MAY STILL CHOOSE TO PRESS FOR BY APPEAL THEREFROM AND DENIAL OF EXCISED PORTIONS.

THE RECORDS UNDER MY NAME FOR WHICH I SEEK DISCLOSURE WITH COPIES THEREOF ARE MAINTAINED BY THE FOLLOWING BRANCHES OF YOUR DEPARTMENT:

IN ATLANTA, FULTON COUNTY, GEORGIA, THURSDAY, OCTOBER 24, 1996, 8:34 A.M., IN OPEN COURT. FOR ORESTE BRUZON: A.K.A. SANTO: GO JURY TRIAL:

**CHARGED OF THE GOVERNMENT INDICTMENT** **COUNT #3 OF 9-29-94.**

MY REQUESTING IS THE REPORT OF THE INVESTIGATIONS DATE 9-29-94,THE GOVERNMENT REPORT "EXHIBIT #6" CONTAINING THE ROUGHLY 490 6. GRAMS OF COCAINE

ORESTE BRUZON:

6-13-06
DATE

FROM: ORESTE BRUZON: A.K.A. SANTO FEDERAL CORRECTIONAL COMPLEX LOW B-3 P.O.BOX.1031 COLEMAN FLORIDA 33521-1033.

SEE ATTACHED

# EXHIBIT B

*PA*
*06-2829*
*(F)*

July 16, 2006

*8/4/06*

*no request # listed #06-1380 Still Pending*

*DEA*

Co-Director
Office of Information and Privacy
Flag Building, Suite 570
Washington, DC 20530

Re: FIOA Appeal

Dear Sir/Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the accompanying implementing regulations, I hereby appeal my request letter sent on June 13, 2006. A a copy of the request letter is attached as Exhibit A.

In the letter, I requested for information on drug exhibits the government purported to have collected during their investigation in the case of <u>United States v. Bruzon</u>, Case No. 1:95-CR-537 (N.D. Ga. 1995).

Pursuant to FOIA requirements, the Drug Enforcement Administration (DEA) Agency had ten (10) working days, from the date of receipt, to respond. Now, approximately thirty (30) days later, I have not yet received a responsive letter from the DEA Agency.

WHEREFORE, I ask that this Office intervene in this matter and order the DEA Agency to comply with the FOIA requirements, by responding within the appropriate time frame.

Sincerely,

*Oreste Bruzon*

Oreste Bruzon
Reg. No. 43855-019/Unit B3
Federal Correctional Complex
Coleman (low)
P.O. Box 1031
Coleman, Fl 33521

OFFICE OF INFORMATION
AND PRIVACY

AUG 0 4 2006

RECEIVED

# EXHIBIT C

**U.S. Department** ⸱ustice

Office of Information and Privacy

Telephone: (202) 514-3642

Washington, D.C. 20530

**SEP 1 9 2006**

Mr. Oreste Bruzon
Register No. 43855-019
Federal Correctional Complex
Post Office Box 1031
Coleman, FL 33521

Re:     Appeal No. 06-2829
         Request No. 06-1380
         JTR:CIH

Dear Mr. Bruzon:

You attempted to appeal from the failure of the Drug Enforcement Administration (DEA) to respond to your request for access to records pertaining to yourself.

Department of Justice regulations provide for an administrative appeal only after there has been an adverse determination by a component. See 28 C.F.R. § 16.9 (2006). As no adverse determination has yet been made, there is no action for this Office to consider on appeal. In particular, the Freedom of Information Act itself contemplates judicial review, rather than an administrative appeal, when an agency has failed to respond to a request within the statutory time limits. See 5 U.S.C. § 552(a)(6)(C)(i).

I have forwarded your letter to DEA. You may also wish to contact it directly and inquire about the status of your request. You may appeal any further adverse determination made by DEA.

Sincerely,

Daniel J. Metcalfe
Director

DEA

# EXHIBIT D

**U.S. Department of Justice**

Drug Enforcement Administration

---

*Case Number: 06-1380-P*                               OCT 0 5 2006

*Subject of Request: BRUZON, ORESTE.*

Oreste Bruzon
Reg. No. 43855-019
FCC Coleman
P.O. Box 1032
Coleman, Florida 33521-1031

Dear Mr. Bruzon:

The Drug Enforcement Administration (DEA) has received your Freedom of Information/Privacy Act (FOI/PA) request for access to records pertaining to you.

Your request has been assigned the above number. Please include this number in any future correspondence to this office regarding this request.

In regard to your reference to your Case Number **1:95-CR-537**, please be advised that DEA does not maintain its system of records using court case numbers; therefore, we are unable to determine what information, if any, is available to you pertaining to the above criminal court docket number. Instead, the DEA would only be able to provide *investigative reports* pertaining to you if the DEA participated in your investigation.

Before our office can proceed with processing your request, it will be necessary for you to submit the enclosed Department of Justice (DOJ), Certificate of Identity, Form 361, to ensure that we have the necessary search criteria to conduct an adequate search for any responsive records in the DEA database.

This letter confirms your obligation that by filing your request, you have implicitly agreed to pay all applicable fees charged under 28 C.F.R. 16.11.

Further, for purposes of assessing fees, your request has been categorized as *"all others"* in which you will be afforded two (2) hours of search and 100 pages of duplication at no charge. You will be responsible for all other fees incurred beyond the above threshold. At that time, the DEA will be able to provide you with an estimate of any fees for processing your request. However, upon receipt of all processing fees, the Drug Enforcement Administration (DEA) **cannot** guarantee that any records will be made available to you pursuant to the Freedom of Information Act, 5 U.S.C. § 552. *It is requested that you provide this office with a statement which expresses your intent to pay fees associated with the processing of your request*.

2

Please forward your response to the following address:

> Drug Enforcement Administration
> Operations Unit (SARO)
> FOI/Records Management Section
> Washington, D.C. 20537

To this end, no further action will be taken regarding your request until you have reformulated your initial request letter taking into consideration the information outlined above. At that time, the DEA will be able to provide you with an estimate of any fees for processing your request.

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

# EXHIBIT E

Freedom of Information Operation Unit
Drug Enforcement Administration
Department of Justice
700 Army Navy Drive
Arlington, VA 22202


Re: Request No. 06-1380; Appeal No. 06-2829

Dear Sir/Madam:

On June 13, 2006, I submitted a request to the Drug Enforcement Administration("DEA"), seeking information as to all drug exhibits the government purported to have collected during their investigation in my case. See <u>United States v. Bruzon</u>, Case No. 1:95-CR-537 (N.D. Ga. 1995). I specifically requested for those drug exhibits which were introduced at my trial. <u>"SPECIFIC"</u> I NEED REPORT INVESTIGATION EXHIBIT #6 DATE: 9-29-94:

On July 16, 2006, after thirty(30) days without any response from the DEA, I filed an appeal to the Office of Information and Privacy. In response, the Office of Information and Privacy suggested that I contact your agency "directly and inquire about the status of [my] request."

Now, in following the Office of Information and Privacy advise, I resubmit my request for all drug exhibits introduced at my trial.


Dated: <u>10- 16- 06</u>

Sincerely,

<u>Oreste Bruzon</u>

Oreste Bruzon
Reg.No. 43855-019/Unit B4
Federal Correctional Complex Low
P.O. Box 1031
Coleman, Fl 33521

"NOTE:.TO SPECIFIC"
WHAT I NEED FOR YOU DEPARTMENT
IS THE INVESTIGATION REPORT
DATE: 9-29-94:FOR EXHIBIT #6.

FROM:...ORESTE BRUZON: A.K.A. SANTO #43855-019

FEDERAL CORRECTIONAL COMPLEX LOW

B-3 P.O.BOX. 1031 COLEMAN FLORIDA 33521-1031

TO:...U.S.DEPARTMENT OF JUSTICE DRUG ENFORCEMENT

ADMINISTRATION WASHINGTON, DC 20537

CASE NUMBER: 06-1380-P

DERA: MS. KATHERINE L. MYRICK.

THE AGENT STEARNS, SPECIAL INVESTIGATION. THE ATLANTA GA "DEA" SAID IN JURY TRIAL THAT HIS PART OF THE INVESTIGATION ON ORESTE BRUZON WAS WORKING WITH C.I.CAMACARO, TO PURCHASE HALF A KILO OF COCAINE WHICH WAS DOVE ON 9-29-94. THE AGENT SAID HIS SENT IT TO DEA MIAMI LABORATORY. THIS INVESTIGATION REPORT ITS REFERENT TO AS "EXHIBIT #6 TO 9-29-94".

IN JURY TRIAL PROSECUTOR SAID THE HALF KILO IS EXHIBIT #6.9-29-94.

"TO SPECIFIC" "ONLY" UNDER FILE "NO. G3-94-0100" A COPY OF DRUG EXHIBIT #6.9-29-94" REPORT INVESTIGATION.

ORESTE BRUZO: A.K.A. SANTO: *Oreste Bruzon* DATED 10-19-06 :

2006 OCT 27 PM 1: 56

SARO
OPERATIONS UNIT

SEE: ATACH



U.S. Department of Justice                 **Certification of Identity**               

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]    ORESTE BRUZON: A.K.A. SANTO.  #43855-019

Current Address    FCC-COLEMAN P.O.BOX 1031 LOW B-3 COLEMAN FL 33521-1031

Date of Birth    7-18-41.

Place of Birth  HOLGUIN ORIENTE CUBA

Social Security Number [2]    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

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3] _Oreste Bruzon_                 Date  10-19-06

---

**Optional: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____
(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

FORM APPROVED OMB NO. 1103-0016
EXPIRES 1/31/98

FORM DOJ-361
FEB. 95

R

# EXHIBIT F

**U.S. Department of Justice**
Drug Enforcement Administration

_____ DEC 0 7 2006 _____

**Case Number: 06-1380-P**

**Subject of Request: Bruzon, Oreste**

Oreste Bruzon #43855-019
FCC Coleman Unit B4/Complex Low
P.O. Box 1031
Coleman, FL  33521

Dear Oreste Bruzon:

        The Drug Enforcement Administration (DEA) has received your request for a status check on your initial Freedom of Information/Privacy Act (FOI/PA) request.

        On October 5, 2006 a letter was sent to you from our office requesting that you complete the Department of Justice (DOJ), Certificate of Identity, Form 361 that was enclosed.  We explained in that letter that before our office could proceed with processing your request, it would be necessary for you to complete and submit that form.  Again we are enclosing a DOJ, Form 361 for you to complete and return to our office.

        In reference to your Case Number **1:95-CR-537,** we informed you in our previous letter, that DEA does not index its investigative records using a Court/Criminal Case and/or Docket Number.  Under the FOIA, agencies are not required to search for records not under the ***control and custody*** of that agency.

        However, you could assist us in locating the information you seek by providing us with the date of your arrest and/or the date of your sentencing, along with any other information that will help us locate and retrieve the requested information.

        This letter confirms your obligation that by filing your request, you have implicitly agreed to pay all applicable fees charged under 28 C.F.R. 16.11, up to $25.00.

        No further action will be taken regarding this request, until we are in receipt of the documentation requested above.

                            Sincerely,

                            Katherine L. Myrick
                            Chief, Operations Unit
                            FOI/Records Management Section

Enclosure

99, 64

# EXHIBIT G

**U.S. Departme of Justice**

Drug Enforcemen Administration

JAN 1 7 2007

**Case Number: 06-1380-P**

**Subject of Request:  Bruzon, Oreste**

Oreste Bruzon #43855-019
FCC Coleman Unit B4/Complex Low
P.O. Box 1031
Coleman, FL 33521

Dear Oreste Bruzon:

The Drug Enforcement Administration (DEA) has received your Certification of Identity form DOJ-361.

We have constituted your request as a *"Self/First Party"* request.  Accordingly, we have reopened your request and placed it on a list of requests waiting processing.  In order to expedite all requests that require retrieval, processing and duplication of documents, your request will be handled in chronological order based on the date of this letter.

Your request has been assigned the above number.  Please include this number in any future correspondence to this office regarding this request.

As stated in our previous letter to you, by filing this request, you have implicitly agreed to pay all applicable fees charged under 28 C.F.R. 16.11 up to $25.

Please be assured that your request is being handled as equitably as possible.  Upon completion of the initial search and/or processing, you will be notified of all applicable fees, *and payment will be required prior to release of any records*.  If there are no fees associated with the processing of your request, all documents that can be released will be made available to you at the earliest possible date.

Sincerely,

*Katherine S.*

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

99, 64

# EXHIBIT H

FROM:.. ORESTE BRUZON: A.K.A. SANTO

FEDERAL CORRECTIONAL COMPLEX

LOW B-4 P.O.BOX 1031 COLEMAN

FLORIDA 33521-1031.
====================

CASE NUMBER: 06-1380-P

TO:...DEAR: KATHERINE L. MYRICK: CHIEF,

OPERATIONS UNIT FOI-RECORDS

FOI-RECORDS MANAGEMENT SECTION

U.S.DEPARTMENT OF JUSTICE DRUG

ENFORCEMENT ADMINISTRATION

WASHINGTON, DC 20537

NOTE:.. TO DEAR: MYRICK: IN THIS CASE THE AGENTS (NAMED) MANUEL PEREZ: DANNY SINDALL AND JIN STEARNS:.. DATE ARREST JANUARY 16 1996: (SEE ATTACHE (A):..DATE JURY TRIAL. OCTOBER 23, 1996: (SEE ATTACHE: (B). DATE SENTENCE FEBRUARY 21, 1997: (SEE ATTACHE (C).

DEAR: MYRICK: I NEED ONLY ONE REPORT INSVESTIGATION) THE REPORT IS REPORT INVESTIGATION DATE 9-29-94 EXHIBIT #6 IS HALF- KILO THE COCAINE THE GOVERNMENT PRESENTED TO JURY TRIAL. THE AGENTS SAID I SOLD HALF KILO TO I.C. CAMACARO... SEE THE TRANSCRPT DAY THE JURY TRIAL ATTACHE (D)

ORESTE BRUZON: *Oreste Bruzon* DATE 12-21-06 :

U.S. Department of Justice        **Certification of Identity**    CASE. NO. J6-1380-P 

---

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

**Full Name of Requester** [1]    ORETES BRUZON: A,K,A. SANTO

**Current Address**    FEDERAL CORRECTIONAL COMPLEX LOW B-3 P.O. BOX 1032 COLEMAN FL. 33521-1031

**Date of Birth**    7-18-1941,

**Place of Birth**    OLQUIN ORIENTE CUBA.

**Social Security Number** [2]    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

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [3]    *Oreste Bruzon*      **Date**   12- 21- 06

---

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

---

(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

# EXHIBIT I



**U.S. Departm t of Justice**
Drug Enforcement Administration

---

FEB 2 7 2007

*Case Number: 06-1380-P*

*Subject: BRUZON, ORESTE A.K.A. SANTO*

Oreste Bruzon
Reg. No. 43855-019
Federal Correctional Complex
P.O. Box 1031, Low B-4
Coleman, Florida 33521-1031

Dear Mr. Oreste Bruzon:

    This letter responds to your Privacy Act request dated December 21, 2006, addressed to the Drug Enforcement Administration (DEA), FOI/Records Management Section, Operations Unit (SARO), seeking access to information regarding a Report of Investigation dated September 29, 1994 and Exhibit #6 under investigative case file G3-94-0100.

    The processing of your request identified certain materials that will be released to you. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a. Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption. An additional enclosure with this letter explains these exemptions in more detail. The document is being forwarded to you with this letter.

    A computerized search of the DEA Investigative Reporting and Filing System and the DEA Automated Intelligence Records System indicates that you have been named the subject of a DEA investigation and reported in investigations that resulted in your indictment and/or arrest. Additional information is enclosed with this letter.

    The rules and regulations of the Drug Enforcement Administration applicable to Freedom of Information Act requests are contained in the Code of Federal Regulations, Title 28, Part 16, as amended. They are published in the Federal Register and are available for inspection by members of the public.

67

Page Two

If you wish to appeal any denial of your request, you may do so within sixty (60) days from the date of this letter pursuant to 28 C.F.R. 16.9. The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

CO-DIRECTOR
OFFICE OF INFORMATION AND PRIVACY
NYAV BUILDING, 11TH FLOOR
WASHINGTON, D.C. 20530

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Number of pages withheld:   3

Number of pages released:   1

Number of pages referred:   0

**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

Freedom of Information Act
5 U.S.C. 552

Privacy Act
5 U.S.C. 552a

[ ] (b)(1)      [ ] (b)(5)      [X] (b)(7)(C)        [ ] (d)(5)      [ ] (k)(2)

[X] (b)(2)      [ ] (b)(6)      [X] (b)(7)(D)        [X] (j)(2)      [ ] (k)(5)

[ ] (b)(3)      [ ] (b)(7)(A)   [ ] (b)(7)(E)        [ ] (k)(1)      [ ] (k)(6)

[ ] (b)(4)      [ ] (b)(7)(B)   [X] (b)(7)(F)

Enclosures